# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**MARK SPERRY,**

               **Plaintiff,**

**-vs-**                                     **Case No.  6:05-cv-877-Orl-JGG**

**JO ANNE B. BARNHART,**
**COMMISSIONER OF SOCIAL**
**SECURITY,**

               **Defendant.**

_____

## MEMORANDUM OF DECISION

      Plaintiff Mark Sperry ["Sperry"] appeals to the district court from a final decision of the Commissioner of Social Security [the "Commissioner"] denying his application for a period of disability and disability insurance benefits.  *See* Docket No. 1 (complaint).  For the reasons set forth below, the Commissioner's decision is **REMANDED**.

## I.    PROCEDURAL HISTORY

      On February 26, 2002, Sperry filed a claim for supplemental security income benefits, claiming disability as of October 1, 2001 due to degenerative disc disease, degenerative joint disease, and degenerative arthritis in the left leg.  R. 43 - 44, 55.  His claim was denied initially and upon reconsideration.  R.23, 27.  On August 12, 2004, the Honorable Robert D. Marcinkowski, Administrative Law Judge ["ALJ"], held a thirty-minute hearing on Sperry's claim in Ocala, Florida.  R. 216 - 43.  Non-attorney Jim Cooper III represented Sperry at the hearing.  R. 18, 216.  The ALJ heard testimony from Sperry.  R. 217.

On November 17, 2004, the ALJ issued a decision that Sperry was not disabled and not entitled

to benefits.  R. 8 - 17.  Following a review of the medical and other record evidence, the ALJ found

that Sperry could not perform his past relevant work as a construction laborer.  R. 12, 16, Finding 6.

The ALJ found that Sperry nevertheless retained the residual functional capacity ["RFC"] to perform

the full range of the physical exertional requirements of light work.  R. 16, Finding 10.  The ALJ

specified that Sperry could lift and carry no more than twenty pounds occasionally and ten pounds

frequently; sit, stand, and walk for approximately six hours in an eight-hour workday; and push and

pull without limitation.  R. 16, Finding 5.  The ALJ also found that Sperry had "occasional

limitations" in his abilities to balance, stoop, kneel, crouch, and crawl, and that Sperry could not climb

ladders, ropes, or scaffolding.  *Id.*  Further, Sperry had to avoid moderate exposure to hazardous

machinery and heights.  *Id.*  Applying the Medical-Vocational Guidelines, the ALJ concluded that

Sperry was not disabled.[1]  R. 16, Finding 11.

The Appeals Council denied review.  R. 4 - 6.  On June 13, 2005, Sperry timely appealed the

Appeals Council's decision to the United States District Court.  Docket No. 1 at 1.  On January 18,

2006, Sperry filed in this Court a memorandum of law in support of his appeal.  Docket No. 16.  On

March 20, 2006, the Commissioner filed a memorandum in support of her decision that Sperry was

not disabled.  Docket No. 18.  The appeal is ripe for determination.

---

[1]The Social Security ALJs face a herculean task.  The Commissioner now expects ALJs to hear and decide 50 to 55 decisions per month according to a former Chief ALJ in a July 2005 presentation at a Federal Judicial Center workshop on disability appeals.  With only the help of non-attorney decision-writers and staff attorneys, the ALJs must rapidly process a monumental backlog of thousands of complex, aging cases.  The effects are felt in the district court. According to the AOUSC, the Middle District of Florida has the third highest volume of disability appeals in the nation. Each magistrate judge in the Orlando Division, for example, resolves approximately fifty-three appeals every year — an average of about one per week.

## II.   THE PARTIES' POSITIONS

Sperry assigns one error to the Commissioner.  Sperry claims that the Commissioner failed to meet her burden to establish that Sperry could perform other work that exists in the national economy. Docket No. 16 at 1, 3.  Sperry argues that the ALJ should have heard testimony from an impartial vocational expert in light of Sperry's significant non-exertional impairments.  *Id.* at 4 - 6.

The Commissioner argues that substantial evidence supports her decision to deny disability. The Commissioner contends that the ALJ correctly determined that Sperry's non-exertional impairments did not significantly limit his ability to perform the full range of light work.  Docket No. 18-1 at 7-8.

## III.   THE STANDARD OF REVIEW

### A.   AFFIRMANCE

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v.*

*Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir.

1991). The district court must view the evidence as a whole, taking into account evidence favorable

as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d

835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of

factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence

detracting from evidence on which Commissioner relied).

### B.    REVERSAL

Congress has empowered the district court to reverse the decision of the Commissioner without

remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). The district court will reverse a

Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision

fails to provide the district court with sufficient reasoning to determine that the Commissioner

properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066

(11th Cir. 1994); *accord, Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v.

Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the decision of the

Commissioner and order an award of disability benefits where the Commissioner has already

considered the essential evidence and it is clear that the cumulative effect of the evidence establishes

disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen

v. Heckler*, 748 F.2d 629, 631, 636 - 37 (11th Cir. 1984). A claimant may be entitled to an immediate

award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835,

840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting

the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

**C.     REMAND**

The district court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996). To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); *accord, Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30  (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work) (treating psychologist acknowledged that claimant had improved in response to treatment and could work in a supportive, non-competitive, tailor-made work environment). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (ALJ should consider on remand the need for orthopedic evaluation). After a

sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction.  *Jackson*, 99 F.3d at 1089, 1095.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish:  1.) that there is new, non-cumulative evidence; 2.) that the evidence is material — relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3.) there is good cause for failure to submit the evidence at the administrative level.  *See Jackson*, 99 F.3d at 1090 - 92;  *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988);  *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir. 1986);  *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *see also*, *Keeton v. Dept. of Health and Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994).

A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant.  *Jackson*, 99 F.3d at 1095.  With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact.  *Jackson*, 99 F.3d at 1095.  The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.[2]  *Id.*

---

[2]The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. *Jackson*, 99 F.3d at 1089, 1095 n.4 and surrounding text. In a sentence-four remand, the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction. *Id.* In a sentence-six remand, the time runs from the post-remand entry-of-judgment date in the district court. *Id.* Any Plaintiff intending to seek attorney's fees for past-due benefits under 42 U.S.C. § 406 (b)(1)(A) shall move the Court to include in any remand order an extension of the 14-day period described in Fed. R. Civ. P. 54 (d)(2)(B) so as to specify an extended deadline that follows the Commissioner's determination of Plaintiff's past-due benefits. *Bergen v. Comm'r of Soc. Sec.*, 454 F. 3d 1273, 1278 n.2 (11th Cir. 2006).

IV.   **THE LAW**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505 - 404.1511.

A.   **DEVELOPING THE RECORD**

The ALJ has a duty to fully and fairly develop the record.  *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988); *Cowart v. Schweiker*, 662 F.2d 731, 735 - 36 (11th Cir. 1981).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right.  *See* 42 U.S.C.§ 406; *Cowart*, 662 F.2d at 734.  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  *See Cowart*, 662 F.2d at 735 - 36.

Where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  *See Brown v. Shalala*, 44 F.3d 931, 934 - 35 (11th Cir. 1995), *citing Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982).  This special duty requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts" and to be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Cowart*, 662 F.2d at 735 (citations omitted).

### B.    THE FIVE STEP EVALUATION

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his or her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent him or her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering his or her residual functional capacity, age, education, and past work) prevent him or her from doing other work that exists in the national economy, then claimant is disabled.  20 C.F.R. § 404.1520(f).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).  Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *See Jamison v. Bowen*, 814 F.2d 585, 588 - 89 (11th Cir. 1987); *Davis*, 985

-8-

F.2d at 534.  A remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly.  *Vega v. Commissioner*, 265 F.2d 1214, 1219 (11th Cir. 2001).

The claimant has the burden of proving the existence of a disability as defined by the Social Security Act.  *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  If the claimant is unable to establish an impairment that meets the Listings, the claimant must prove an inability to perform the claimant's past relevant work.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  In this step, the ALJ assesses the claimant's residual functional capacity ["RFC"].  This assessment measures whether a claimant can perform past relevant work despite his or her impairment.  20 C.F.C. § 404.1520 (f); *see also, Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  The ALJ makes this determination by considering the claimant's ability to lift weight, sit, stand, push, and pull.  *See* 20 C.F.C. § 404.1545(b).

The ALJ first considers whether the claimant has the RFC to perform the functional demands and duties of a past job as actually performed by the claimant.  *See* SSR 82-61.  If so, the claimant is not disabled.  If not, the ALJ then considers whether the claimant can perform the functional demands of the job as it is generally performed in the national economy.  SSR  82-61.  In determining the physical exertional requirements of work available in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy.  20 C.F.C. § 404.1567.

The claimant must prove disability on or before the last day of his or  her insured status for the purposes of disability benefits.  *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979); 42 U.S.C. §§ 416(i)(3); 423(a), (c).  If a claimant becomes disabled after losing insured status, the claim for disability benefits must be denied despite

the claimant's disability. *See, e.g., Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir. 1973); *Chance v. Califano*, 574 F.2d 274 (5th Cir. 1978).

###   C.    OTHER WORK

Once the ALJ finds that a claimant cannot return to his or her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Foote*, 67 F.3d at 1558; *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines [the "grids"]. *Foote,* 67 F.3d at 1558.

Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00 (e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements). Exclusive reliance is not appropriate, however, "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walker v. Bowen*, 826 F.2d 996, 1002-03 (11th Cir. 1987). In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. *Foote*, 67 F.3d at 1559; *Chester v. Bowen*, 792 F.2d 129, 132 (11th Cir. 1986); *see also, MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986) (when non-exertional limitations

are alleged, the preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert).

It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. *See Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989); *Ferguson v. Schweiker*, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. *Foote*, 67 F.3d at 1559.

### D.       TREATING PHYSICIANS

Absent the existence of "good cause" to the contrary, the ALJ must give substantial weight to the opinion, diagnosis and medical evidence of a treating physician. *See MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Lewis v. Callahan*, 125 F.3d 1436, 1439 - 1441 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); *Sabo v. Commissioner of Social Security*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2).

The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the

accuracy of his findings and statements).  Similarly, the ALJ may reject any medical opinion if the evidence supports a contrary finding.  *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1986).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also, Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1.) length of the treatment relationship and the frequency of examination; 2.) the nature and extent of the treatment relationship; 3.) the medical evidence supporting the opinion; 4.) consistency with the record a whole; 5.) specialization in the medical issues at issue; 6.) other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir.1984); *see also,* 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (*see* 20 C.F.R. §§ 404.1545 and 404.1546), or

-12-

the application of vocational factors because those ultimate determinations are for the Commissioner. 20 C.F.R. § 404.1527(e).

The ALJ must, however, state with particularity the weight given different medical opinions and the reasons therefore, and the failure to do so is reversible error. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). Without the ALJ making the necessary findings, it is impossible for a reviewing court to determine whether the ultimate decision is supported by substantial evidence. *Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985).

### E.    PAIN

Pain is a non-exertional impairment. *Foote*, 67 F.3d at 1559; 826 F.2d at 1003. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1529. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote,* 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*,

-13-

957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

F.    CREDIBILITY

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Foote,* 67 F.3d at 1561-62*; Jones v. Dep't of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  *See Hale v. Bowman,* 831 F.2d 1007, 1012 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986).  As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  *Foote,* 67 F.3d at 1561-62*; Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  *See Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote v. Chater*, 67 F.3d at 1562 (quoting *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir.1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

G.    MEDICAL TESTS AND EXAMINATIONS

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; *see also, Conley v. Bowmen*, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988); *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir. 1984) (failure to order such an evaluation may be reversible error).  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  20 C.F.R. § 416.917 (1998).

V.    **APPLICATION AND ANALYSIS**

A.    **THE FACTS**

Sperry was born on December 29, 1957, and was forty six years old on the date of the ALJ hearing.  R. 221.  Sperry completed high school, and has work experience as a construction day laborer, bridge builder, welder, and commercial roofer.  R. 61, 169, 224.  Sperry alleges disability as of October 1, 2001 due to degenerative disc disease and degenerative arthritis in the left leg.  R. 43 - 44, 55.

In 1975, when Sperry was seventeen years old, he injured his left knee playing football.  R. 100.  Sperry was given a cast.  *Id.*  In August 1985, Sperry sustained another knee injury while working as a heavy construction laborer.  *Id.*  After the injury, Sperry stopped working full-time for

-15-

approximately ten years.  *See* R. 48.  In 1986, Sperry sought treatment for his knee with Dr. Urrichio.[3]
*Id.*  Dr. Urrichio performed an arthroscopy, and concluded that Sperry had an tear in his anterior
ligament and degenerative changes of the knee.  *Id.*

Upon referral from Dr. Urrichio, Sperry received treatment with at the Jewett Orthopaiedic
Center from 1987 through 1992.  R. 88 - 99.  An X-ray on May 28, 1987 revealed post-traumatic
degenerative arthritis and chronic anterior cruciate insufficiency of Sperry's left knee.  R. 100.  On
July 2, 1987, Sperry underwent an open anterior cruciate ligament reconstruction procedure, which
he "tolerated . . . well."  *Id.*  After the procedure, Sperry went to physical therapy and numerous
follow-up visits with his doctors.  R. 96 - 99.  Sperry reported returning to "light duty type activities,"
and worked part-time at a pet shop on January 26, 1988.  R. 96.

On December 13, 1988, Sperry went to the Jewitt Orthopaedic Center.  He reported having
fallen three days earlier while he was at home.  R. 94.  Sperry stated that he had twisted his knee, and
heard a loud popping noise.  *Id.*  His knee swelled, and Sperry noted pain and "clicking" sensations
in his knee.  *Id.*  The diagnosis was probable rupture of the patella tendon graft in the left knee.  *Id.*
On March 2, 1989, Sperry underwent a Gore-Tex anterior cruciate ligament reconstruction.  R. 93.
Sperry had some discomfort with his knee after the procedure, but improved overall.  R. 89-92.  On
February 10, 1992, Sperry reported "doing fairly well."  R. 89.  Sperry also reported working.  *Id.*

On July 8, 1996, Sperry sought treatment with Dr. Carl O. Ollivierre, M.D. at the Lake Centre
for Rehabilitation.  R. 121 - 22.  Sperry reported "excruciating" pain, discomfort, and swelling in his
knee since his 1985 work injury.  R. 121.  Dr. Ollivierre's physical examination revealed moderate

---

[3]The treatment notes do not state Dr. Uricchio's first name.  *See* R. 88 - 100.

to severe swelling in his left knee.  *Id.*  Dr. Ollivierre diagnosed post-traumatic degenerative joint disease of the left knee.  *Id.*  Dr. Ollivierre believed that further arthroscopies would not help Sperry, and stated that x-rays and Sperry's pain level justified knee replacement procedure (arthroplasty).  *Id.* Sperry underwent a left knee arthroplasty on January 7, 1997.  R. 110-12.  Preoperatively and postoperatively, Dr. Ollivierre diagnosed degenerative joint disease of the left knee.  R. 110.  At a follow-up visit on January 28, 1997, Dr. Ollivierre noted that Sperry walked without crutches, and that his knee was "partial weight bearing" with moderate discomfort around surgical area.  R. 109.  X-ray results indicated that Sperry's left knee prosthesis was "in good position."  *Id.*  Sperry had earnings between 1996 and 2000.  R. 47 - 48.  In his last job, he worked as a skilled laborer.  R. 224 - 25.

On December 17, 1999, Sperry went to the Florida Waterman Hospital after a car accident. R. 149 - 151.  The only records from this visit are results from x-rays taken of Sperry's cervical and lumbar spine.  *See id.*  X-rays of the cervical spine revealed moderate degenerative changes with bridging anterior osteophyte formation.  *Id.*  X-rays of the lumbar spine were negative for acute fractures and significant subluxation, but revealed mild or early degenerative changes of the lumbar spine.  R. 150.

On February 10, 2002, Sperry hit his head on the side of the door while getting into a car.  R. 163.  On February 12, 2002, Sperry went to the emergency room at Leesburg Regional Medical Center with complaints of neck pain, but left the emergency room without receiving treatment.  R. 153 - 54. On February 13, 2002, the next day, Sperry went the Florida Hospital Waterman emergency room. R. 159.  He reported experiencing neck pain for two days.  *Id.*  Sperry was discharged the same day, and instructed to increase support to his neck with a soft cervical collar, and follow-up with Dr.

-17-

Ollivierre in one week.  R. 168.  X-rays of Sperry's cervical spine (taken at the Florida Hospital

Waterman emergency room) revealed ankylosis at C2-3, C3-4, and C4-5 anteriorly.  R. 165 - 66. The

diagnosis was degenerative joint disease secondary to chronic anterior fusion at C1-4.  R. 167 - 68.

On February 26, 2002, Sperry filed his claim for supplemental security income benefits.  R.

43 - 44.  On August 13, 2002, Dr. Donald J. Tindall, M.D., conducted a consultative examination of

Sperry for the Office of Disability Determinations.  R. 169 - 71.  Sperry complained of pain in his

neck, back, and his left knee.  R. 169.  He stated that he could not comfortably sit or stand for any

length of time, and stated that he is able to walk for fifty yards before needing to rest.  *Id.*  He also

stated that he has constant left knee pain, which increased when he put weight on his left leg.  *Id.*

Dr. Tindall's examination revealed neck tenderness and spasms of the right and left

sternocleidomastoids and paraspinous cervical muscles.  R. 170.  Sperry had midline tenderness and

right and left paraspinous muscle spasms in his back, and moderate diffuse swelling without redness

or warmth of the left knee.  *Id.*  Sperry further exhibited normal gait, 5/5 grip strength, and 5/5 strength

in the lower extremities.  *Id.*  Dr. Tindall diagnosed chronic neck pain, low back pain, and status post

left total knee arthroplasty.  R. 171.  The doctor, however, did not know the cause of Sperry's neck

and back pain *Id.*  Dr. Tindall concluded that Sperry would be unable to perform his past work as a

commercial roofer, welder, and/or bridge builder.  *Id.*

On September 5, 2002, Dr. Christina Rodriguez, a state agency non-examining physician,

opined as to Sperry' physical RFC.  R. 172 - 79.  Dr. Rodriguez opined that Sperry could lift twenty

pounds occasionally and ten pounds frequently; stand, walk, and sit for six hours in an eight-hour

workday; and push and pull without limitations in his upper extremities but with limitation in his

lower extremities.  R. 173.  Sperry had some postural limitations.  He could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs.  R. 174.  He could never climb ladders, ropes, or scaffolds.  *Id.*  According to Dr. Rodriguez, Sperry had no manipulative, visual, and communicative limitations.  R. 175-76.  He also had to avoid concentrated exposure to hazards such as machinery and heights.  R. 176.

On January 8, 2003, Dr. Jim Takach, a second non-examining state agency physician, also completed a physical RFC assessment of Sperry.  R. 180 - 87.  Dr. Takach opined that Sperry could perform light work.  Sperry could lift twenty pounds occasionally and ten pounds frequently; stand, walk, and sit for six hours in an eight-hour workday; and push and pull without limitation.  R. 181.  Dr. Takach opined that Sperry could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but could never climb ladders, ropes, or scaffolds.  R. 182.  Dr. Takach also stated that Sperry had to avoid moderate exposure to hazards, but had no other limitations.  R. 183 - 84.

On November 15, 2003, Sperry was seated as the right front passenger, and another car "rear ended" his car.  R. 193.  On November 25, 2003, Sperry went to the Leesburg Regional Medical Center emergency room due to pain in his back.  R. 188 - 93.  Sperry reported experiencing mid to low-back pain since the car accident.  *Id.*  At the emergency room, x-rays were taken of Sperry's cervical, thoracic, and lumbosacral spine.  R. 196 - 200.  X-rays of the cervical spine revealed continuous flowing osteophyte extending off the inferior margin of C2 down to C5, with an incomplete bridging osteophyte between C5 and C6.  R. 196.  The impression was flowing osteophyte of the upper cervical spine consistent with dish from C2 through C6.  *Id.*  X-rays of the thoracic spine revealed compression deformities at T7 and T8 with some acute kyphosis, as well as adjacent end

plate sclerotic changes at C6-C7 and T8-T9.  R. 197.  X-rays of the lumbosacral spine revealed loss

of lordosis of the lumbar spine with early end plate degenerative changes at the lower levels, as well

as some bulging of the discs at L3-L4 and L4-L5, either into the neural foramina or into the spinal

canal. R. 199.  The emergency room physician diagnosed cervical, thoracic, and lumbar muscle strain;

prescribed Vicodin and Skelaxin for his pain; and discharged Sperry on the same day.  R. 195.

On March 17, 2004, Sperry went to Community Medical Care Center with a head and chest

cold.  R. 214.  The treating physician assessed acute upper respiratory infection, pneumonitis and

bronchitis.  *Id.*  On March 30, 2004, Sperry returned to the Community Medical Care Center for a

follow-up visit.  R. 210.  His treating physician assessed acute bronchitis, improved left leg cellulitis,

and improved left leg edema.  *Id.*  The physician prescribed Cipro, an antibiotic.  *Id.*  On April 28,

2004, Sperry returned to Community Medical Care Center for another follow-up visit.  R. 206 - 07.

Sperry reported having insomnia as a result of his blood pressure mediation.  R. 206.  Sperry's lower

leg showed less swelling and less cellulitis.  *Id.*  The doctor assessed hypertension and improved left

leg cellulitis.  *Id.*

On August 12, 2004, Sperry testified at the hearing before the ALJ.  R. 216 - 43.  Sperry

described feeling pain from his lower left leg from his knee to his foot, as well as constant pain in his

"whole spinal column."  R. 230 - 31.  Sperry stated that laying down made the pain in his leg worse.

R. 233.  He attempts to relieve his pain by putting pillows between his legs.  R. 234.  Sperry further

testified that he is able to walk approximately forty yards comfortably.  *Id.*  He can stand for no longer

than ten to twenty minutes, and cannot bend, stoop, or squat.  R. 234 - 35.  Sperry estimated that he

can lift approximately three to ten pounds (or a light bag of groceries), but stated that a gallon of milk

-20-

was "pushing it." R. 235. He also testified that his legs were beginning to hurt from sitting in the hearing. R. 235. Sperry also stated that he developed cellulitis in his left leg after his 1997 knee surgery. R. 236 - 37. The cellulitis began as a small spot, but subsequently spread throughout his leg, and causes fluid to acccumulate in his leg. R. 237 - 38.

### B.     THE ANALYSIS

Sperry contends that the ALJ erred by relying exclusively on the grids. Docket No. 16 at 1, 3 - 4. According to Sperry, his postural limitations and pain are severe non-exertional limitations which preclude exclusive reliance on the grids. *Id.* at 5. Sperry argues that the Commissioner therefore failed to meet her burden to establish that Sperry could perform other work that exists in the national economy. *Id.* at 4-5. The Commissioner counters that the ALJ correctly concluded that Sperry could perform substantially all of the full range of light work, and that Sperry's non-exertional limitations did not significantly affect hisr ability to do work. Docket No. 18-1 at 7-8. Therefore, the Commissioner argues, the ALJ did not err by exclusively relying on the grids to conclude that Sperry was not disabled. *Id.*

Exclusive reliance on the grids is not appropriate when a claimant is *unable to perform a full range of work* at a given residual functional level, or when a claimant has *a non-exertional impairment that significantly limits basic work skills*.[4] In this case, the ALJ found that Sperry retained the RFC to lift and carry twenty pounds occasionally and frequently; sit, stand, and walk for approximately six

---

[4]A claimant is able to perform the full range of work if they can perform "[a]ll or substantially all occupations existing at an exertional level." SSR 83-10.

hours in an eight-hour day; and push and pull without limitation.[5]  R. 14.  The ALJ also found that Sperry had occasional limitations in his ability to balance, stoop, kneel, crouch, and crawl, and that Sperry had no ability to climb ladders, ropes, or scaffolding.  *Id.*  The ALJ further stated that Sperry had to avoid moderate exposure to hazardous machinery and heights.  *Id.*  Next, the ALJ then found that:

> although the claimant has occasional postural limitations, light work requires stooping but it requires only occasional stooping.  The claimant is able to perform substantially all of the seven primary strength demands of light work.  If someone can do light work, we determine that he can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods.
> Because the evidence supports a finding that the claimant can perform the demands of the full range of light work, with occasional postural limitations and no ability to climb ladders, ropes and scaffolding, a finding of "not disabled" is directed by [the grids].

R. 15.

The ALJ thus included non-exertional impairments in Sperry's RFC.[6]  The ALJ acknowledged that light work requires only occasional stooping, yet made no specific finding as to whether Sperry's postural limitations were severe enough to preclude a wide range of employment at the light work level.  In addition, despite Sperry's allegations of disabling pain in his leg and back, the ALJ never stated his finding on the pain testimony.  *See* R. 14 - 16; *see also* R. 230 - 31.

---

[5]The ALJ stated that he afforded "great weight" to the opinion of Dr. Rodriguez (a non-examining state agency physician) that Sperry could push and pull with limited ability in his lower extremities, but the ALJ also found that Sperry retained the RFC to push and pull without *any* limitation.  R. 14.

[6]A non-exertional impairment is any impairment that does not directly affect the ability to sit, stand, walk, lift, carry, push, or pull.  Social Security Ruling 83-10.  Non-exertional impairments thus include postural and environmental limitations.  *Id.*; *see also* 20 C.F.R. § 416.945(d).

Instead, the ALJ summarized Sperry's testimony on his abilities to walk, stand, and lift a gallon of milk,[7] and concluded that Sperry's allegations "regarding his limitations [are] *credible* to the extent that they are supported by the medical evidence of record."  R. 14, 16, Finding 4 (emphasis added).  The ALJ never mentions the pain testimony in his decision.  *See id.*  Accordingly, the ALJ did not articulate specific and adequate reasons for apparently discrediting Sperry's pain testimony.  The ALJ made no specific finding as to whether Sperry's pain, a nonexertional impairment, was severe enough to preclude a wide range of employment at the light work level.  As such, the ALJ's exclusive reliance on the grids was improper.  The Commissioner failed to meet her burden, and remand is necessary on this issue.

## VI.  <u>CONCLUSION</u>

For the reasons stated above, the decision is **REMANDED** to the Commissioner under Sentence Four for further proceedings not inconsistent with this decision.  The fourteen-day period described in Fed. R. Civ. P. 54 (d)(2)(B) is hereby extended until after the Commissioner's determination of Plaintiff's past-due benefits.  *See Bergen v. Comm'r of Soc. Sec.*,  454 F. 3d 1273, 1278 n.2 (11th Cir. 2006).  The Clerk should enter a judgment and close the case.

**DONE AND ORDERED** this 24th day of August, 2006.

JAMES G. GLAZEBROOK
UNITED STATES MAGISTRATE JUDGE

---

[7]The ALJ states that "[t]he claimant testified that he can . . . lift a gallon of milk."  R. 14.  Sperry, however, did not testify that he could lift a gallon of milk.  At the hearing, the ALJ asked Sperry whether he could lift a gallon of milk, and Sperry, responded, "It's – that's pushing it.  I've got these two hernias.  See, I've got the hernias I have to deal with."  R. 235.

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to
All Counsel of Record and *Pro Se* Litigants,
and to:

Mary Ann Sloan, Chief Counsel
Dennis R. Williams, Deputy Chief Counsel
Paul Jones, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia        30303-8920

Susan Roark Waldron
Assistant United States Attorney
400 N. Tampa St., Suite 3200
Tampa, FL            33602

The Honorable Robert D. Marcinkowski
Administrative Law Judge
c/o Social Security Administration
Office of Hearings and Appeals
Suite 300, Glenridge Building
3505 Lake Lynda Drive
Orlando, FL            32817

-24-